OPINION
Robert Slone is appealing a judgment of the Montgomery County Common Pleas Court Juvenile Division finding that he was a delinquent child by reason of two counts of rape.
Robert Slone, a minor, (hereinafter "Robert") was charged in a delinquency complaint by the State of Ohio (hereinafter "State") with three counts of rape and one count of gross sexual imposition against a seven year old boy, Nathan Schoolcraft (hereinafter "Nathan"). On May 19, 2000, a trial was held on the charges in which Robert, Nathan, and James Brineger testified. James Brineger, a fourteen year old boy, testified that he witnessed Robert perform oral sex on Nathan twice during December of 1999 as well as two other incidents of sexual activity. Additionally, the State called Nathan to testify. After a brief voir dire, the judge permitted Nathan to testify. Nathan corroborated the testimony of James Brineger as to the two incidences of oral sex but denied the two other events of sexual activity. In contrast, Robert testified that the alleged events never occurred, but rather, that James Brineger had touched Nathan's penis. Robert further alleged that James Brineger had made up the story out of anger towards Robert and scared Nathan into complying with him.
The trial court judge found Nathan and James Brineger to be credible and disbelieved Robert's allegations placing James Brineger as the sexual offender. The judge found Robert guilty of two counts of delinquency by reason of rape and dismissed the remaining charges which Nathan had denied occurred. On June 22, 2000, a dispositional hearing was held and Robert was committed to the Department of Youth Services for a minimum of twelve months. Robert filed this timely appeal.
Robert raises two assignments of error:
 1. THE TRIAL COURT ERRED WHEN IT PERMITTED NATHAN SCHOOLCRAFT TO TESTIFY.
 2. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF LEGAL COUNSEL AND WAS THUS DENIED A FAIR TRIAL, IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS.
Robert argues that Nathan was incompetent to testify, the voir dire of Nathan was insufficient, and Nathan was never given an oath to testify. Also, Robert argues that he had ineffective assistance of counsel because his counsel failed to object to Nathan testifying, participated in inaccurate stipulations of fact, did not challenge conflicting testimony, failed to adequately prepare himself or Robert, and failed to move for an acquittal at the close of the State's case. We disagree.
Appellant's first assignment of error:
 A trial judge has broad discretion in determining the competency of a witness to testify at trial since he is in the best position to observe the witness and determine the witness' understanding of the truth. State v. Clark (1994), 71 Ohio St.3d 466; State v. Frazier (1991), 61 Ohio St.3d 247, 251, certiorari denied (1992), 503 U.S. 941; State v. Wildman (1945), 145 Ohio St. 379, 31 O.O. 5. A trial court's finding of competency will only be disturbed upon a finding that the trial court abused its discretion. Clark, supra; Wildman, supra. An abuse of discretion is more than an error of law but instead amounts to an attitude that is unreasonable, arbitrary, or unconscionable. Clark, supra.
Evid.R. 601 provides that "[e]very person is competent to be a witness except * * * children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601. A trial judge is required to conduct a voir dire examination of a child under ten years of age to determine if he is competent to testify. Frazier,supra. The Ohio Supreme Court set out the following test to determine a child's competency:
 In determining whether a child under ten is competent to testify, the trial court must take into consideration (1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful.
Id.
However, a general inquiry is sufficient for a trial court to determine if a child can perceive, recollect, and truthfully relate events. Statev. McNeil (1998), 83 Ohio St.3d 438, certiorari denied (1999)526 U.S. 1137; State v. Kelly (1994), 93 Ohio App.3d 257. This Court found in State v. Owens (Feb. 25, 2000), Montgomery App. No. 17394, unreported, that two children were competent to testify when the judge elicited examples from the children demonstrating that they knew the difference between the truth and a lie. Further, based on the children's statements that if they lied they would get in trouble, the court concluded that the children understood truth and falsity and the responsibility to be truthful. Id. A child may be competent to testify even though the child is unable to recollect some areas or initially does not recognize the concept of truth, so long as the voir dire continues on to demonstrate that the child can perceive and recall generally and understands the concept of truthfulness. State v. Boyd (Oct. 31, 1997), Champaign App. No. 97 CA 1, unreported, appeal dismissed (1998),81 Ohio St.3d 1453 (finding children who were six, seven, and nine years old competent to testify). Moreover, provided that a child is definite about other questions, some measure of ambiguity is insufficient to render a child incompetent as a matter of law. State v. Steed (Aug. 13, 1984), Greene App. No. 83-CA-73, unreported.
In the instant case, the trial court conducted a voir dire of the child and determined that Nathan could observe and recall events correctly, and that he understood the obligation to tell the truth. In testing Nathan's ability to perceive, recollect, and communicate facts, Nathan was able to communicate what grade he was in, his teacher's name, what he studies in school, his favorite television show which was NASCAR racing, his favorite NASCAR driver, and the sponsor's name for his favorite driver. (Tr. 38-40). Nathan even corrected the trial court judge when he mispronounced his teacher's name. (Tr. 38) Although Robert points to the fact that Nathan could not remember the name of his school or where it was located as evidence that Nathan could not perceive and recollect facts, as in Boyd and Steed, the fact that a child cannot remember some areas does not deem the child incompetent to testify. Nathan's responses during the voir dire satisfied the first three requirements of theFrazier test.
As for the Frazier requirement that the child understand the difference between truth and falsity, the court used an illustration of taking cookies from a cookie jar to contrast the truth from a lie; Nathan understood and responded appropriately. However, Robert argues that the voir dire was insufficient on the issue of the truth versus a lie because initially Nathan stated that he did not know what it meant to promise to tell the truth or the difference between the truth and a lie. Yet, as inBoyd and Owens, the child may not initially recognize the word truth, but if through illustrations the child demonstrates that he knows the difference between the truth and a lie, the child meets Frazier's fourth requirement for competency, as Nathan did. Finally, Frazier requires that the voir dire demonstrate that the child has an appreciation of his responsibility to tell the truth. In his voir dire, Nathan stated that he understood that he was to tell the truth and the importance of telling the truth. Further, Nathan demonstrated his knowledge of the consequences of lying by stating that if he lied he would have to "go to my room and stay." (Tr. 41). Therefore, although the voir dire may have been brief, we can find nothing that demonstrates an attitude on the part of the trial court that was arbitrary, unreasonable, or unconscionable in conducting its voir dire and in finding that Nathan was competent to testify. Thus, we find no abuse of discretion.
Further, Robert argues that the trial court abused its discretion by failing to give Nathan an oath before testifying. Although R.C. 2317.30
provides that before testifying a witness must be sworn to tell the truth, the Ohio Supreme Court in Frazier stated that the trial court has a large amount of flexibility on this issue. Evid.R. 603 provides that "every witness shall be required to declare that he will testify truthfully, by oath or affirmation administered in the form calculated to awaken his conscience and impress his mind with his duty to do so." However, the Staff Note to this rule clarifies that no special formula is required and states "[t]he rule is designed to afford flexibility in dealing with children." Further this Court has stated that, "it is not necessary that the child have a detailed knowledge of the nature of an oath, but, it must be shown that the child understands the duty to tell the truth." State v. Arnold (Oct. 1, 1992), Greene App. No. 91 CA 43, unreported, appeal dismissed (1998), 83 Ohio St.3d 1458.
In the instant action, the trial court had the following exchange with Nathan:
 The Court: And you understand that we want you to tell us what really happened, do you understand?
[Nathan]: Yes.
The Court: The truth.
[Nathan]: Yes.
* * *
 The Court: I'm going to allow him to testify. You have to tell us the truth, okay?
[Nathan]: Okay.
(Tr. 41-42.)
The trial court utilized flexibility in dealing with Nathan due to his young age. Complying with Evid.R. 603, the trial court conveyed to Nathan the importance of his duty to tell the truth and Nathan agreed that he would tell the truth. Although the trial court judge did not use a conventional oath, he impressed upon Nathan the responsibility to tell the truth and had determined from the voir dire that Nathan knew the difference between the truth and a lie. Although the oath was not traditional, we find no evidence of an attitude on the part of the trial court which is unreasonable, arbitrary, or unconscionable and thus, no abuse of discretion. Robert's first assignment of error is without merit and overruled.
Appellant's second assignment of error:
 Robert argues that he was denied effective assistance of counsel and thus a fair trial in violation of his constitutional rights. The standard in an ineffective assistance of counsel complaint is objective reasonableness. Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011. The Defendant has the burden to demonstrate that (1) the deficiency in the performance of counsel was "so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment," and (2) the counsel's errors were "so serious as to deprive the defendant of a fair trial[.]" Strickland, supra. Further, the defendant must demonstrate prejudice by showing that were it not for the counsel's errors, a reasonable possibility exists that the outcome of the trial would have been different. Id. However, a strong presumption exists that the counsel's conduct was within "the wide range of reasonable professional assistance." Id.
Robert points to several ways by which his counsel was deficient. First, Robert asserts that his counsel was ineffective by failing to object to Nathan's testimony on the grounds that he was incompetent. However, we previously stated in Robert's first assignment of error that the trial court properly concluded that Nathan was competent to testify. Thus, there is no deficiency on the part of Robert's counsel for not objecting to Nathan's testimony.
Second, Robert argues that his counsel was ineffective by failing to challenge Nathan's testimony and object to Nathan's use as a witness because of inconsistencies in his testimony. Inconsistencies in a witness' testimony impacts his credibility, not his competency. Cobb v.State (1991), 81 Ohio App.3d 179. Robert points to the fact that initially Nathan stated that he did not know Robert, but when the question was repeated he corrected himself and stated he did know Robert. Also, Robert points to the fact that Nathan could not state how he knew Robert. However, once asked, "Did you live by Robert?," Nathan was able to answer yes and state that he used to live three trailers away from Robert. (Tr. 43-44). Robert argues that his counsel was ineffective for not challenging the court's finding of competency for Nathan based on these responses or challenging Nathan on cross examination. Yet, as stated above, Nathan was competent to testify, therefore failing to object to Nathan's competency was not defective. Moreover, the transcript demonstrates that Robert's counsel did throughly cross examine Nathan, inquiring about whether Nathan was sledding with James Brineger rather than Robert and clarifying that Robert had never sexually touched Nathan in the shed, which contradicted James Brineger's testimony and one of the charges leveled against Robert. Therefore, Robert's counsel conducted a sufficient cross examination challenging Nathan's testimony on direct and was not deficient.
Third, Robert argues that his counsel was ineffective by participating in stipulations which incorrectly listed Robert's age as fourteen rather than fifteen and stipulated to venue. The determination of whether or not to stipulate to facts is a matter of trial strategy. State v. Braxton
(1995), 102 Ohio App.3d 28. The Ohio Supreme Court has stated, "even `debatable trial tactics' do not constitute a deprivation of the effective assistance of counsel." State v. Clayton (1980),62 Ohio St.2d 45, 16 O.O.3d 35, certiorari denied (1980), 449 U.S. 879. Therefore, in order to prove that defense counsel was ineffective, "the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'"Lakewood v. Town (1995), 106 Ohio App.3d 521, appeal dismissed (1996),75 Ohio St.3d 1404, quoting Strickland, supra. In the instant action, defense counsel stipulated to venue, which Robert argues was deficient since the State could not have relied on Nathan to give the correct forum. However had defense counsel not stipulated to venue, the State simply could have called a separate witness to testify to venue, such as James Brineger. As to stipulating to Robert's age as fourteen, the prosecutor corrected counsel during the stipulations and the court took note of Robert's date of birth and that he was "[f]ourteen or fifteen, depending on that time frame." (Tr. 4-5). Therefore, as each of these facts could have been obtained without the stipulations, Robert's counsel was not ineffective for participating in the stipulations.
Fourth, Robert argues that his counsel was ineffective for failing to challenge conflicting testimony as to two of the charged acts. Unless a party can demonstrate prejudice, the failure to question witnesses does not deny a defendant effective assistance of counsel. Lakewood, supra. Robert argues that Nathan's direct examination testimony denied two of the charges and that his counsel did not vigorously pursue Nathan on cross examination. As stated above, Robert's counsel sufficiently cross examined Nathan. Further Robert's counsel on cross examination clarified Nathan's testimony denying two of the charges. As a result, the trial court dismissed these two charges. The manner and style of questioning a witness is a trial tactic and does not amount to ineffective assistance of counsel. Assuming arguendo that Robert's counsel's cross examination of Nathan was insufficient as to these two charges, Robert was not prejudiced as these charges were dismissed.
Fifth, Robert argues that his counsel was ineffective because he failed to adequately prepare himself or Robert for trial. As stated earlier, even debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. Clayton, supra. Also, items attached to an appellate brief that are not in the lower court file are not part of the record and will not be considered by the appellate court. Lamar v.Marbury (1982), 69 Ohio St.2d 274, 23 O.O.3d 269; Middletown v. Allen
(1989), 63 Ohio App.3d 443; State v. Richardson (Feb. 17, 1987), Butler App. No. CA86-07-108, unreported. Robert asserts that his counsel failed to question witnesses on conflicts in their testimony and on whether James Brineger initiated false rumors because he was not prepared to pursue the issues since he had only briefly met with Robert. As evidence that his counsel failed to prepare, Robert offers an affidavit attached to his brief which states that he only met with his trial counsel on two occasions, which combined amounted to less than an hour. However, we cannot find a duplicate of this affidavit in the lower court file and thus, the affidavit is not part of the record and cannot be considered on appeal. Further, the transcript demonstrates that during closing arguments, Robert's counsel addressed the conflicts in the testimony of witnesses and Robert's theory that James Brineger invented the story. As no other evidence exists to suggest that Robert's counsel inadequately prepared, nothing demonstrates that Robert's counsel was ineffective in his preparedness.
Finally, Robert argues that his counsel was deficient for not raising a Crim.R. 29 motion for acquittal at the close of the State's case. Robert argues that as Nathan was incompetent, the State only offered James Brineger's testimony, which was insufficient to support the elements of the offenses. However, as discussed in the first assignment of error, Nathan was competent and his testimony was proper. Thus, the State presented two competent witnesses who gave consistent testimony addressing the elements of the two counts of rape for which Robert was convicted. Therefore, the State met its burden and we find no deficiency in Robert's counsel's failure to advance a Crim.R. 29 motion for acquittal. Thus, we find that Robert was not denied effective assistance of counsel and the second assignment of error lacks merit and is overruled.
The judgment of the trial court is affirmed.
GRADY, P.J. and FAIN, J., concur.